WILL O. BASSETT, Respondent, v. WABASH RAILROAD COMPANY, Appellant.

Kansas City Court of Appeals.   October 7, 1912.

NEGLIGENCE: Master and Servant: Defective Brake. Plaintiff, a brakeman, while standing beside a car giving signals for switching to the engineer, was struck in the face by a fragment from a brake shoe which had fallen down to the track and broke. The car did not belong to defendant, but was a foreign car. The key which held the brake shoe to the brakehead was missing from its proper place, and the brake shoe fell in consequence thereof while the car was in motion. *Held*, that under the evidence the jury were entitled to believe that reasonably careful visual inspection would have disclosed the instability of the key and the likelihood of its loss, and that a brake so worn and defective that its key would not remain in place during the transportation of the car, was not a reasonably safe appliance.

Appeal from Randolph Circuit Court.—*Hon. A. H. Waller*, Judge.

AFFIRMED.

*J. L. Minnis* and *Robertson & Robertson* for appellant.

*M. J. Lilly* and *Hunter & Chamier* for respondent.

JOHNSON, J.—Plaintiff sustained personal injuries while in the service of defendant as a brakeman and alleges in his petition that his injuries were caused by negligence of defendant. The answer is a general denial and pleas of assumed risk and contributory negligence. Verdict and judgment were for plaintiff in the sum of three thousand dollars and the cause is here on the appeal of defendant.

The injury occurred in defendant's yards at Mexico while the crew of a local freight train of which plaintiff was head brakeman was switching a car of lumber to the team track for unloading. The train had left Moberly that morning and was bound for Montgomery City. On arriving at Mexico its crew followed their usual custom of doing the switching necessary to be done in the yards at that point and were so engaged when the injury occurred. The car of lumber in question had come from St. Louis the day before and was being switched to the team track when one of its brake shoes fell to the track and broke. A fragment from the broken shoe struck plaintiff in the face and injured him. The car was owned by another railroad company and was received by defendant at St. Louis for transportation to Mexico, its destination. The brake and brake shoe were of standard make and may thus be described. The brake shoe was cast iron about fourteen inches long, four or five inches wide and two inches thick; weighed twenty or twenty-five pounds and was curved to fit the rim of the car wheel against which it would be pressed to retard the motion of the wheel. The convex side of the brake shoe was attached to the concave side of the brake head which,

in turn, was attached to the brake beam. The adjoining sides of the brake shoe and brake head were provided at the ends and in the middle with interlocking perforated lugs. When in position the holes in the lugs met in a way to form a continuous vertical opening for the reception of a key that locked the brake shoe to the brake head. The key was of iron or steel, was about fourteen inches long and an inch wide, was curved to conform to the curvature of the line of contact between the brake shoe and break head and was inserted into the channel through the lugs from the top. A head at the top of the key kept it from working down. The arrangement of the lugs and the curvature of their plane of attachment were designed to hold the key firmly in position and to give proper rigidity to the device. Plaintiff was standing near the track giving signals to the engineer when the brake shoe became detached from the brake head and fell. It is his contention that the mishap was caused by the loss of the brake key occasioned by the worn and defective condition of the brake shoe and the interlocking lugs which had so impaired the device that the key was not held in position by the lugs but had become loose and had worked upward by the jolting of the wheels while the car was running until it had fallen out.

The petition alleges that plaintiff ''was struck by said brake shoe and by a piece or pieces thereof by and in direct and immediate consequence of the negligent failure and omission of defendant to repair and keep in repair said brake shoe, and by the negligent failure and omission of defendant to replace said dangerous, defective and unsafe brake shoe with one that was safe and thus furnish and provide him, the said plaintiff, with reasonably safe and sufficient machinery and appliances for the equipment, movement and operation of said train and of the cars thereof and of said other cars in said railroad yards, and of the negligent failure and omission of defendant to prop-

erly inspect said train and cars when defendant knew, or by such inspection might have known of the defective condition of said brake shoe and by reason of the negligent failure and omission of defendant to warn plaintiff of the dangerous and defective condition of said brake shoe.''

The evidence of plaintiff tends to show that the brake shoe was old and so worn that its attachment to the brake head had become defective and insecure and that the key was not held in position by the lugs which also had become worn but was so loose that it easily could have been worked out of its position by the jarring of the wheels in running over rough places in the track. The brake shoe was broken in two pieces and plaintiff who examined the pieces two days after the injury testified they disclosed the existence of an old crack at the place of the break. One of plaintiff's witnesses contradicted him on this point, testifying that the broken ends showed no indication of an old crack or flaw. The brake key could not be found and, doubtless, had been lost during the transportation of the car from St. Louis. There is evidence to the effect that the brake shoe might have continued in its position for a time after the loss of the key. Further it appears from some of the evidence that such brake keys are not always held tightly in place but may be removed with little difficulty and sometimes are removed by trespassers or even by trainmen who use them as chisels to open car doors and sometimes forget to replace them. The evidence of defendant tends to show that the car in question which, as stated, was a foreign car, was inspected by defendant at its yards in St. Louis and Moberly and that its brakes were found to be in good condition and so reported by the inspectors. As to the inspection of brake shoes the inspector at St. Louis testified on cross-examination:

''Q. In case you find a defect in the brake shoe do you specify what the defect is? A. I certainly do.

"Q. If you find a brake shoe where it is worn thin do you make a record? A. No, sir.

"Q. How nearly worn out does it have to be before you would? A. I never have rejected any of them yet. . . .

"Q. Do you look at each brake shoe individually? A. Look at all of them.

"Q. What would have to be discovered before you would consider it a defect, mark it a defect? A. Broken or gone.

"Q. The brake shoe would have to be broken or gone altogether? A. Yes, sir.

"Q. Before it would be marked defective? A. Yes, sir."

The evidence of another inspector who inspected the car in substance was the same. Defendant introduced in evidence the following rule of the company: "Trainmen must know that the cars in their trains are in good order before starting, and inspect them whenever they have an opportunity to do so, particularly when entering or leaving sidings or waiting for other trains. All cars taken in their trains at intermediate stations must be examined with extra care." The principal contention of counsel for defendant is that the court erred in refusing their request for an instruction in the nature of a demurrer to the evidence of plaintiff. It is argued that the evidence fails to show that negligence of defendant was the proximate cause of the injury but does show that plaintiff's own negligent breach of the rule of the company just quoted directly contributed to his injury. We shall discuss these propositions in the order of their statement.

It is conceded the injury was caused by the falling and breaking of the brake shoe while the car was in motion and that the brake shoe fell in consequence of the loss of the key from its proper place, while the evidence of defendant discloses that the key could

have been abstracted by a trespasser or trainman, the inference that such was the fact rests more on conjecture and speculation than on an evidentiary foundation. It is manifest from all the evidence that owing to the worn and defective condition of the brake, the key was loose in its socket and the inference is reasonable that its displacement was caused by the jolting of the wheels in running. Such inference is not speculative but rests on a substantial evidentiary basis.

The duty of defendant towards plaintiff, its servant, called for the exercise of reasonable care to keep the instrumentalities with which and about which plaintiff was required to work in reasonable repair. The jury were entitled to conclude that a brake so worn and defective that its key would not remain in place during the transportation of the car was not a reasonably safe appliance. But it is argued that defendant was not an insurer of the safety of the brake and that its whole duty towards its servant was performed when it inspected the car at St. Louis and its inspectors found the brake in good order and so reported it.

The failure of a railroad company to provide for the inspection of cars at reasonable intervals would constitute a breach of its duty towards its servants to exercise reasonable care for their safety and the negligent failure of its inspectors to do their work properly would be negligence for which the company should be held liable. The evidence does not show any negligence of defendant except in the manner of the performance of the work of inspection at St. Louis. The brake was in plain view and its worn condition was apparent. The jury were entitled to believe that a reasonably careful visual inspection would have disclosed the instability of the key and the likelihood of its loss on the trip of the car to Mexico and that in reporting the brake in good order the inspectors neg-

ligently failed to perform the duty the master intrusted
to them.

We conclude this branch of the case with the ob-
servation that the evidence of plaintiff tends to show
that his injury was the direct result of negligence of
defendant in failing to exercise reasonable care to
provide its servant with a reasonably safe place in
which to work. We do not think plaintiff should be
held guilty of negligence in law because of his fail-
ure to inspect the brake before the car was shunted
to the unloading track. The evidence fails to disclose
that he had a reasonable opportunity to make such in-
spection and the rule of defendant in evidence certainly
cannot be interpreted as requiring a brakeman on his
own initiative and regardless of the instructions of
the conductor to delay switching operations by in-
specting every car moved from one track to another.
That would be an unreasonable construction to place
on the rule. The demurrer to the evidence was prop-
erly overruled. We find no prejudicial error in the
record and the judgment is affirmed. All concur.